RICHARD L. WIECHEN,                )
                                   )
                Plaintiff,         )
                                   )
     v.                            )     No.  05 C 4688
                                   )
PALOS COMMUNITY HOSPITAL,          )
                                   )
                Defendant.         )

## MEMORANDUM ORDER

Pro se plaintiff Richard Wiechen ("Wiechen") has charged
Palos Community Hospital ("Palos") with two types of employment
discrimination, one ascribable to his multiple sclerosis ("MS")
and the other because of his age--the first of those being an
asserted violation of the Americans with Disabilities Act ("ADA,"
42 U.S.C. §§12101 to 12117), while the second is an asserted
violation of the Age Discrimination in Employment Act ("ADEA," 29
U.S.C. §§621 to 634).[1]  Palos has moved for summary judgment on
each of those claims under Fed. R. Civ. P. ("Rule") 56.  For the
reasons stated in this memorandum opinion and order, Palos'
motion is granted as to both the ADA and the ADEA charges.

## Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the
absence of any genuine issue of material fact (Celotex Corp. v.

_____

[1]  For convenience, provisions of each statute will be cited
simply as "Section --," omitting prefatory references to
Titles 42 and 29.  That dual "Section" usage should not create
any confusion, because the section numbers within the two
statutes are so different.

<u>Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (<u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001)). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts as viewed in the light most favorable to the plaintiff, but only so long as those facts are supported by record evidence.[2] In that respect, as reflected in its P. R. Mem. and its LR 56.1(a)(3) response, Palos has identified a number of substantial defects in Wiechen's LR 56.1(b)(3) response to Palos' initial statement of material facts. Those comprise Wiechen's admission of many of the facts

_____

[2] This District Court's LR 56.1 implements Rule 56 by requiring the parties to submit evidentiary statements and responses to such statements to highlight which facts are in dispute and which are not. Again for convenience, this opinion employs a number of shorthand citation forms: for Palos' initial LR 56.1 statement, "P. St. ¶--"; for its supporting memorandum, "P. Mem.--"; and for its reply memorandum, "P. R. Mem. --"; and for Wiechen's initial LR 56.1 statement, "W. St. ¶--"; for his additional facts statement, "W. Add'l St. ¶--"; for his responsive memorandum, "W. Mem. --"; for his exhibits, "W. Ex. --"; and for his deposition, "W. Dep."

in Palos' statement (either directly or by incomplete denial), his argumentative rather than factually based denials, his insertion of extraneous information in his own responses and his reliance on assertions unsupported in the manner required by Rule 56(e). As Palos also notes correctly, LR 56.1 calls for strict compliance, so that a nonmovant's failure to comply is treated as the admission of the movant's statement of facts (Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) is exemplary of a host of cases so holding).

Nonmovant Wiechen was also entitled under LR 56.1(b)(3) to submit a statement of any additional facts that would trigger the denial of summary judgment. Wiechen has ventured to provide such facts, some in attempted compliance with the LR and others embedded in his memorandum of law, and still others improperly buried in his responses to Palos' LR 56.1(a)(3) statement. More problematic than their improper form, many of those asserted facts are unsupported by admissible evidence based on personal knowledge, as required by Rule 56(e).

This opinion could simply disregard any such nonconforming evidence (see, e.g., Cichon v. Exelon Generation Co., 401 F.3d 803, 809-10 (7th Cir. 2005)). But mindful that Wiechen has proceeded pro se, this Court (as always) heeds the teaching of Haines v. Kerner, 404 U.S. 519, 520 (1972)(per curiam) and will not hold him to the strict standards that it expects lawyers to

satisfy.  Instead this Court has attempted to ferret out and consider all admissible evidence set forth by Wiechen in his submissions.  Even so, Wiechen has not overcome Palos' motion for summary judgment.

## Background

Palos is a hospital located in Palos Heights, Illinois (P. St. ¶3).  Wiechen, born in 1954, was employed in Palos' accounting department (he is a Certified Public Accountant) from 1994 until his termination in October 2004 (P. St. ¶¶4, 5, 73; W. Mem. 1-2; W. Dep. 6:8-9).  In 1999 Wiechen was diagnosed with MS (P. St. ¶24).  While the disease has had no effect on his cognitive abilities, by 2004 it had created some observable physical symptoms (P. St. ¶27; W. St. ¶32).

All was apparently well with Wiechen's employment at Palos until October 2003, when Tom Laporte ("Laporte") joined Palos as an Assistant Vice President of Finance responsible for all accounting functions at Palos, including supervision of the staff (Wiechen included) in the accounting department (P. St. ¶¶6-7; W. Mem. 2).  At that time Laporte reassigned job responsibilities among the staff (again including Wiechen)(P. St. ¶8; W. Mem. 2).  As part of his newly configured duties, Wiechen became responsible for reconciling Palos' home health care facility's records with the hospital's general ledger, reconciling Blue Cross accounts with particular patient accounts at Palos and

4

ensuring that prepaid expenses at the hospital were properly recorded and amortized (P. St. ¶¶9-11).

By February 9, 2004 Laporte found cause to issue a first record of employee counseling to Wiechen, based on Laporte's review of his work on those new assignments (P. St. ¶12).[3] That review revealed that the home health care accounts for which Wiechen was responsible had not been reconciled and that Wiechen had neither investigated nor explained the problem to Laporte's satisfaction (id. ¶¶13-16). Finding that Wiechen had also conducted an incomplete analysis of the prepaid accounts so that a $170,000 adjustment had to be made, Laporte considered Wiechen's handling of that responsibility unsatisfactory as well (id. ¶17). In the record of employee counseling, Laporte directed Wiechen to improve his performance over the next month, including correcting the errors that Laporte had noted (id. ¶18).

In response Wiechen wrote this on his employee counseling record (P. St. 21; W. Mem. 2):

> Any help that you can give me would be appreciated. I do not want to use my MS as an excuse, but I'm truly doing the best I can.

While Wiechen believes that his MS symptoms had become apparent by 2004, both Laporte and Palos' Director of Human Resources Bill Cleary ("Cleary") swear that the just-quoted note on his employee

---

[3] Because that and all other operative events thereafter took place during 2004, further references to the dates of those events will not specify the year.

counseling record was the first time that they learned of his MS
(P. St. ¶¶30-32; W. St. ¶32).

After reading the note, Cleary requested that Wiechen meet
with him (P. St. ¶33; W. Mem. 2).  That meeting took place on
February 18, and Cleary then told Wiechen about Palos' long-term
disability plan for which he might qualify.  While the exact
details of that and surrounding conversations are disputed,
Wiechen's version (credited for present purposes) is that Cleary
told him "he had to make a decision if he wanted to go on
disability," that he "could not continue employment" and that
Palos management was giving Wiechen no option other than to go on
disability (W. St. ¶35; W. Mem. 2).  Cleary later provided
Wiechen with the necessary forms to apply for Palos' long term
disability program (P. St. ¶36; W. Mem. 2).  Unable or unwilling
to obtain a required physician's approval, Wiechen told Cleary he
would not be applying for Palos' disability plan (P. St. ¶37; W.
St. ¶37; W. Mem. 3).

Believing that Wiechen had not improved his performance,
Laporte issued him a second record of employee counseling at the
end of March (P. St. ¶38), reflecting that Wiechen's reconcilia-
tions of his accounts had continued to be unsatisfactory, with
unexplained differences, and that there had again been improperly
recorded costs in his prepaid accounts statement (P. St. ¶¶39-
42).  Laporte gave Wiechen another opportunity to improve his

performance to meet Laporte's expectations, but in August Laporte wrote up Wiechen for a third time, finding that the accounts for which Wiechen was responsible were still unreconciled and insufficiently explained (P. St. ¶¶45-49). In Laporte's estimation Wiechen was unable to resolve the problems with his accounts and was not meeting Laporte's expectations for his position (id. ¶¶48, 53).

Early in September Laporte and Cleary met with Wiechen to discuss his performance (P. St. ¶56). They offered him the opportunity, which he accepted, to take part in Palos' Employee Assistance Program to try to bring his performance up to their expectations (id. ¶¶56-57). During that meeting Cleary also asked Wiechen if he "would like to request any accommodation," including an altered schedule under the Family Medical Leave Act (id. ¶58). Wiechen responded that he did not require any such accommodations (id. ¶59).

Later that month Laporte again found that Wiechen's accounts did not reconcile, and he recommended that Wiechen be terminated (P. St. ¶¶60-63). In lieu of termination Cleary offered Wiechen an alternative position at considerably lower pay in Palos' patient billing department (id. ¶69; W. Mem. 4-5). When Wiechen rejected that alternate position Cleary repeated the offer, but this time he told Wiechen that the hospital would keep him at his current pay for two years before gradually reducing his salary to

the top of the patient billing department pay grade (P. St. ¶¶70-
71; W. Mem. 5).  Wiechen rejected that offer as well, and on
October 11 Palos terminated his employment (P. St. ¶73; W. Mem.
5-6).

## ADA Claim and "Disability"

Section 12112(a) prohibits only discrimination against "a
qualified individual with a disability" (Buie v. Quad/Graphics,
Inc., 366 F.3d 496, 502 (7th Cir. 2004)).  Consequently Wiechen
bears the threshold burden of establishing that he had a
"disability" as ADA defines that term (see Roth v. Lutheran Gen.
Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995)).

Section 12102(2) defines "disability" in three alternative
formulations.  Section 12102(2)(A) speaks first of "a physical or
mental impairment that substantially limits one or more of the
major life activities of such individual."  Next Section
12102(2)(B) includes, as a "disability," having a record of the
type of impairment described in Section 12102(2)(A)(Lawson v. CSX
Transp., Inc., 245 F.3d 916, 926 (7th Cir. 2001)).  Finally,
Section 12102(2)(C) extends the "disability" concept to any
situation in which the employee is "regarded as" having the type
of impairment described in Section 12102(2)(A)(Nese v. Julian
Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005)).

Palos does not dispute that Wiechen's MS can be considered a
physical or mental impairment for ADA purposes (P. Mem. 6).   But

as Palos correctly points out, an ADA plaintiff must also "demonstrate that the impairment limits a major life activity" (<u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 195 (2002)). Without evidence of any corresponding impairment of a major life activity, Wiechen's diagnosis of MS would not qualify as a disability under ADA (see, e.g., <u>Wynn v. Whitney Holding Corp.</u>, 220 F.Supp.2d. 582, 589-90 (M.D. La. 2002)).

To overcome that hurdle Wiechen argues that the Social Security Administration ("SSA") determined he was disabled under the Social Security Act, creating a genuine issue of material fact as to whether he was also disabled for ADA purposes. Such cases as <u>Lawson</u>, 245 F.3d at 927 have recognized that despite the different legal standards in the two statutes,[4] "an SSA determination of disability can be relevant and significant evidence in showing that a disability exists for ADA purposes." And it is true that on March 29, 2006 the SSA found that Wiechen had been under a disability--as defined in that statute-- beginning on October 11, 2004 (see W. Ex. E), the same day that Palos terminated Wiechen (see P. St. ¶73).[5]

---

[4] In contrast to ADA, the Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any...physical or mental impairment which... can be expected to last for a continuous period of not less than 12 months" (42 U.S.C. §423(d)(1)(A); <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 801 (1999)).

[5] That identity of dates is no mere coincidence. To be under a disability for SSA purposes, Wiechen could not be engaged

That, however, does not carry the day for Wiechen, for his own testimony precludes a finding of the essential element that his MS actually impaired any major life activity during his employment at Palos before that October 11 date. To the contrary, Wiechen repeatedly insists that he was capable of performing his job without accommodation of any kind, while making no assertion that he was limited in any other major life activity (see P. St. ¶¶23, 27, 58, 59; Gray v. Ameritech Corp., 937 F.Supp. 762, 767 (N.D. Ill. 1996)). And that deficiency is fatal to any claim that invokes the Section 12012(A) or 12102(B) concepts of "disability."

That same flaw also defeats any attempted invocation of Section 12012(2)(C)'s "regarded as" formulation of "disability." Just as with Section 12102(2)(A)'s disability-in-fact definition, to show that he was "regarded as" having a disability by Palos Wiechen must present evidence not only that one of his superiors at Palos was aware of his impairment by MS but also that the superior having that awareness believed that Wiechen's MS substantially limited one of his major life activities (see Nese, 405 F.3d at 643). Once again, with the only major life activity that Wiechen's submissions have potentially put at issue being that of working, Wiechen must present evidence that Palos

---

in any "substantial gainful activity," a requirement that he obviously could not satisfy before his termination by Palos (W. Ex. E; 42 U.S.C. §432(d)(1) (A)).

believed, "at a minimum, that [he was] unable to work in a broad class of jobs" (<u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 491 (1999)--"either a class of jobs or a broad range of jobs," as the EEOC regulation puts it--and not simply in the particular job he was holding or wished to retain at the time (see also <u>Moore v. JB Hunt Transp., Inc.</u>, 221 F.3d 944, 954 (7th Cir. 2000)).

At most Wiechen has presented evidence that Palos, through Laporte and Cleary, was aware of his MS and that one or both of those individuals, in suggesting that Wiechen should go on long-term disability leave rather than continue at Palos, believed that his MS substantially limited his ability to perform the requirements of his then-held position in the accounting department (see P. St. ¶¶24, 33, 34; W. St. ¶¶34, 35). But that does not create any inference that anyone at Palos believed his MS substantially limited his ability to perform a class or range of jobs <u>beyond</u> that one position. Indeed, the evidence is 180° removed from any such inference: Wiechen himself readily admits that Cleary (1) offered him the opportunity to take part in Palos' Employee Assistance Program so that he could potentially retain his accounting position and also (2) offered him alternative employment in Palos' patient billing department (see P. St. ¶¶56, 69-72).

In sum, Wiechen has not created a genuine issue of material fact as to his having had an actionable "disability" under any of

the three statutory formulations of that term.  Accordingly Palos
is entitled to summary judgment on Wiechen's ADA claim.

<u>ADA Claim and "Qualified Individual"</u>

Even if Wiechen had made a sufficient showing as to his
"disability" (as he has not), he would still have faced a second
threshold requirement imposed by ADA.  To bring himself within
ADA's protection, Wiechen also bears the burden of proving that
he is a "qualified individual" (<u>Hammel v. Eau Galle Cheese
Factory</u>, 407 F.3d 852, 863 (7th Cir. 2005)).  As that term is
defined, a  "qualified individual with a disability" is an
"individual with a disability who, with or without reasonable
accommodation, can perform the essential functions of the
employment position that such individual holds or desires"
(Section 12111;  <u>Toyota Motor</u>, 534 U.S. at 193), the confirmation
of which calls for a two-stage inquiry (<u>Bultemeyer v. Fort Wayne
Cmty. Sch.</u>, 100 F.3d 1281, 1284 (7th Cir. 1996)).

For that purpose Wiechen must first demonstrate that he
satisfies the prerequisites for his former position (<u>id</u>.).
Second, he must point to sufficient evidence for a reasonable
jury to conclude that he could perform the essential functions of
that position, either with or without reasonable accommodation
(<u>id</u>.).

While neither party disputes that Wiechen's education and
considerable experience in accounting met the prerequisites for

his former position, there is a considerable difference of opinion between Palos' people and Wiechen as to whether he was able to perform the essential functions of his job in 2003 and 2004 (P. St. ¶¶4, 5, 20; W. Mem. 6; P. Mem. 7-9). But that difference in views does not do the job for Wiechen: When there is only a dispute of opinion--as opposed to a dispute of fact--as to whether an employee is able to perform his job, only the employer's honest opinion really matters to the law (see Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003); Williams v. Seniff, 342 F.3d 774, 789-90 (7th Cir. 2003)). To avert summary judgment Wiechen must go beyond asserting his own evaluation of his qualifications, pointing instead to objective evidence that creates a genuine factual dispute as to the basis for Palos' evaluation of his inability to perform the essential functions of his job (id.). Wiechen has failed to meet that challenge.

It will be remembered that Palos has presented facts to show that from at least February to October Wiechen was unwilling or unable to complete multiple work assignments to the satisfaction of his supervisor Laporte. Back in October 2003, when Laporte reassigned job responsibilities within the accounting department, Wiechen received the new tasks of reconciling various financial accounts and ensuring the proper recording of prepaid expenses at Palos (P. St. ¶6-11). Those tasks are of course within the reasonable expertise of a CPA (P. St. ¶20).

But as already recounted, Wiechen experienced difficulties with those assignments from the start. Despite the issuance of employee counseling records in February and again in March, Wiechen failed to better his unsatisfactory performance. And that continued through August and into September. There is nothing to challenge the honesty of Laporte's determination that Wiechen was incapable of resolving his continuing problems and was not performing to Laporte's expectations of performance by an accountant in Wiechen's position (P. St. ¶¶48). Laporte understandably recommended that Palos terminate Wiechen, and Palos did so on October 11 (id. ¶¶63, 68-72).

In his own submissions Wiechen either admits to those facts or fails to contest them by directing attention to affidavits, depositions or other parts of the record that contain admissible evidence creating a genuine issue of material fact as to his status as a qualified individual. As an example, Wiechen's LR 56.1 response repeatedly points to computer issues and "internal control problems" as an explanation for his lack of success in completing his assignments (see, e.g., W. St. ¶¶22, 44). To begin with, those matters (assuming their truth) do not contest his failures--they simply set forth a claimed excuse. Moreover, Wiechen provides no record references that demonstrate his personal knowledge of those problems, as required by Rule 56(e). Thus his efforts do not suffice to avoid summary judgment (see

<u>Payne</u>, 337 F.3d at 772-73).

Wiechen also argues that because he had "performed the job functions of the job 'Manager of Cost Accounting" at Palos from 1994 until Laporte reassigned his responsibilities in October 2003, he was a qualified individual after the reassignment (see W. Mem. 6).  But that is a non sequitur.  As Palos correctly points out, any adequacy of Wiechen's past performance in no way negates Laporte's legitimate judgment that he was failing to meet expectations as to his newly-assigned duties throughout 2004 (<u>Staples v. Pepsi-Cola Gen. Bottlers, Inc.</u>, 312 F.3d 294, 300 (7th Cir. 2002)).

While it is not altogether clear from his submissions, Wiechen may perhaps be attempting to advance the different contention that the time frame should be shifted back to the reassignment of duties in October 2003, so that the reassignment rather than the ultimate termination was the initial manifestation of Palos' discriminatory actions toward him (see W. Add'l St. ¶2(b)).  Under that approach Wiechen would assert that he was a qualified individual at the time of the assertedly adverse employment action (the reassignment), so that all of the later discipline based on his failure to complete his reassigned duties was, in a manner of speaking,  poisoned by the initial discriminatory reassignment of duties by Laporte.

But that notion won't fly either.  For any such argument to

succeed--for Wiechen to be a qualified individual based on his job performance before the October 2003 reassignment of duties--he would have to show that the reassignment was an act of discrimination as to his terms and conditions of employment. Courts routinely refer to that burden as requiring the identification of an "adverse employment action" (see Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006)), a term that is merely a judicial gloss not present in the employment discrimination statutes (id.). What the term encompasses is that for a change in the terms and conditions of employment to rise to a potential act of discrimination, it must amount to a material difference and not merely one of "the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms or conditions" (id.).[6] Hence a mere reassignment of duties without any change in pay or benefits does

---

[6] Although Minor, id. also characterized the term as not yet having been adopted by the Supreme Court, last Term's opinion in Burlington N. & Santa Fe Ry. v. White, 126 S.Ct. 2405 (2006)--issued two months before Minor and addressing the scope of the Title VII retaliation provision--spoke approvingly of a "materially adverse" action standard (id. at 2415) as applicable even in the less demanding context of a claim of unlawful retaliation. And in doing so the Court distinguished, as nonactionable, "those petty slights or minor annoyances that often take place at work and that all employees experience" (id.)--language startlingly similar to that just quoted in the text. There appears to be little if any doubt that the Minor formulation carries the essential seal of approval by the Supreme Court (on that score, see last week's opinion in Phelan v. County of Cook, 2006 WL 2690986, at *5 & n.3 (7th Cir. Sept. 18)).

not amount to such a material difference or adverse employment action (see <u>McKenzie v. Milwaukee County</u>, 381 F.3d 619, 625-26 (7th Cir. 2004)).

Wiechen has not adverted to any facts in the record to show that the October 2003 reassignment of duties amounted to a material difference in his terms and conditions of employment.[7] Any attempt to shift the relevant time frame is therefore futile, because only the discipline imposed after the October 2003 reassignment of duties equates to the type of action that could be considered a material discriminatory action.

In short, Wiechen's admissions as to the shortcomings in his performance of his assigned accounting tasks from October 2003 to October 2004 actually buttress Palos' determinations to the same effect. And that being so, Wiechen is also unable to show that he is a qualified individual. Employees are not protected by ADA from adverse employment actions motivated by the employees' failure to live up to their employers' performance expectations (see <u>Hammel</u>, 407 F.3d. at 862).[8] So Wiechen's failure on the

_____

[7] Wiechen admits that the reassignments and what was expected of him were generally reasonable--again he attempts only to assert that it was the computer problems and internal control problems that somehow made the new assignments unreasonable (see W. St. ¶44). But once more those assertions, unsupported by any evidence admissible at trial, are not sufficient at the summary judgment stage to create a dispute of material fact as to whether the reassignment was a material adverse change.

[8] Nor does the case pose any issues regarding "whether any reasonable accommodation by the employer would help the employee

"qualified individual" front provides a further--and independent--basis for granting Palos summary judgment on Wiechen's ADA claim.

ADEA

Wiechen also seeks relief under the age discrimination provisions of ADEA. Section 623(a)(1) makes it unlawful for an employer to terminate or otherwise discriminate against an employee with respect to his terms and conditions of employment because of that employee's age. As in employment discrimination cases generally, a plaintiff seeking to prove such a claim may pursue two different routes. One is the ordinarily more difficult direct method, while the other involves the familiar and more frequently employed burden-of-production (not burden-of-persuasion)-shifting quadrille first set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

To prevail under the direct method Wiechen would have had to show, by means of admissible direct or circumstantial evidence, that Palos' termination decision was motivated by his age (see

---

to perform those functions" (<u>Amadio v. Ford Motor Co.</u>, 238 F.3d 919, 928 (7th Cir. 2001)). To the contrary, Wiechen has argued that he is capable of performing the essential functions of his job without any accommodation, as he told Palos before his termination (see P. St. ¶¶58, 59). Moreover, it will be recalled that Palos offered Wiechen opportunities along those lines, but he rejected them. That certainly satisfied Palos' interactive-process responsibilities (see <u>Bultemeyer</u>, 100 F.3d at 1285; P. St. ¶¶56, 58, 59 69-72).

18

Cerruti v. BASF Corp., 349 F.3d 1055, 1060-61 (7th Cir. 2003)).
As Wiechen has neither set forth any facts creating an inference
of age discrimination via the direct method nor appear to argue
that he could do so, that route is not at issue here.

Instead Wiechen attempts to travel the latter path,
beginning with the required showing that he was (1) a member of
the protected age group (at least 40 years old), (2) performing
his job satisfactorily, (3) subjected to a materially adverse
employment action and (4) treated less favorably than younger but
otherwise similarly situated employees (see Bennington v.
Caterpillar Inc., 275 F.3d 654, 659 (7th Cir. 2001)).  Because he
falls at both the second and fourth of those hurdles, Wiechen has
failed to make out a prime facie case under ADEA.

Wiechen's most obvious shortcoming in proof is as to the
last factor:  his failure to show that he was treated less
favorably than some younger but otherwise similarly situated
individual.  Any such showing obviously requires Wiechen to
direct this Court's attention to someone that was
younger--indeed, substantially younger--and could serve as the
more favorably treated comparator (see Radue v. Kimberly-Clark
Corp, 219 F.3d 612, 619 (7th Cir. 2000)).  And even apart from a
lack of clarity as to the identity of any proposed comparator,
Wiechen has not provided any evidence as to anyone's age other
than his own.  For aught that appears, every one involved could

19

possibly be older than himself--or at least not 10 or more years younger, as our Court of Appeals requires (id.).

In addition, the fourth factor requires Wiechen to show that the proposed comparator be similarly situated as to relevant factors such as "performance, qualifications, and conduct" (see Radue, 219 F.3d at 617). Again Wiechen has not brought forward any evidence of any such similarities as to any theoretical comparator. Without such a comparison, Wiechen cannot create an inference of age discrimination requiring a response from Palos via the McDonnell Douglas burden-shifting method.

That alone is enough to defeat Wiechen's ADEA claim. But there is more. As already stated, the second factor in a prima facie case under the indirect method of proof requires the employee to show that he was performing his job satisfactorily (see Bennington, 275 F.3d at 659). That showing is essentially the same as, and serves a purpose similar to, the "qualified individual" requirement in an ADA claim (see Weigel v. Target Stores, 122 F.3d 461, 465 (7th Cir. 1997); Denisi v. Dominick's Finer Foods, 99 F.3d 860, 865-66 (7th Cir. 1996)). Because Wiechen has already been found fatally deficient as to the satisfactory performance component of his ADA claim, he has also failed to meet the McDonnell Douglas prime facie test for an ADEA claim.

As with Wiechen's ADA claim, analysis has shown more than

one basis for rejecting his ADEA claim. Palos is therefore also
entitled to summary judgment on that score.

<u>Conclusion</u>

Even when his case is viewed through the more generous lens
prescribed for pro se litigants by <u>Haines v. Kerner</u>, the law
demands that Wiechen have submitted sufficient evidence to create
some genuine dispute of material fact requiring resolution at
trial. Because he has not done that as to either his ADA or his
ADEA claim, Palos is entitled to a judgment as a matter of law.
Its motion for summary judgment is granted in its entirety, and
this action is dismissed.

Milton I. Shadur
Senior United States District Judge

Date: September 28, 2006